VINCENT RUSSO *v.* COMMON COUNCIL OF THE CITY OF MIDDLETOWN ET AL.
(AC 23380)

Flynn, Bishop and Mihalakos, Js.

*Argued May 27—officially released November 4, 2003*

*Paul D. Buhl*, for the appellant (plaintiff).

*Timothy P. Lynch*, deputy city attorney, for the appellees (defendants).

*Opinion*

FLYNN, J. The plaintiff, Vincent Russo, appeals from the trial court's dismissal of his application for a writ of mandamus against the defendants, the common council and the mayor of the city of Middletown, for lack of subject matter jurisdiction due to mootness. The plaintiff claims on appeal that the court improperly denied his request for relief because although his claim is concededly moot, it falls under the "capable of repetition, yet evading review" exception to the mootness doctrine, and, therefore, his claim is justiciable. In support of this claim, the plaintiff argues that the court improperly found that (1) the exception to the mootness doctrine—"capable of repetition, yet evading review"—did not apply and (2) the ability of citizens to petition for a referendum on the Middletown city budget was an adequate remedy at law. We are not persuaded by the plaintiff's arguments as to the first issue and, thus, affirm the trial court's judgment that it lacked subject matter jurisdiction.

The court found the following facts, which are not in dispute. The plaintiff, a resident and taxpayer of the city of Middletown, brought an action against Middle-

town's common council[1] and the mayor of Middletown, Domenique S. Thornton, claiming that the defendants improperly reduced the net taxable grand list for the 2000-2001 budget year by $46 million, thereby increasing the city's mill rate and raising taxes for Middletown residents. The reduction in the grand list of $46 million was intended to compensate for lost revenue to the city arising from the elderly and disabled property tax relief program, which is governed by General Statutes § 12-170aa et seq. The plaintiff claimed that this grand list reduction was illegal because the tax reduction benefits given to elderly and disabled taxpayers, pursuant to § 12-170aa et seq., were repaid to the city by the state, which resulted in the city annually collecting over $1.3 million more than was needed to fund the budget. In addition, the plaintiff claimed that the amount of the grand list reduction, $46 million, was inaccurate because, even if it is assumed that the city properly reflected a reduction in the grand list to account for this tax relief, the reduction should have amounted to approximately $10,050,000, and, therefore, the $46 million reduction was "arbitrary, capricious and an abuse of discretion." The plaintiff sought two separate orders of mandamus: One to compel the defendant common council to publish a corrected 2000-2001 budget using no reductions for the benefits provided to elderly and disabled homeowners pursuant to § 12-170aa et seq. and another to compel the defendants to publish a budget using the net taxable grand list as provided and certified by the tax assessor when submitting and publishing "future budgets."[2]

---

[1] The common council of the city of Middletown is the legislative body of the city, holding authority under the Middletown city charter.

[2] The plaintiff also sought attorney's fees, costs and "such other and further relief as the court deems just and equitable." If the plaintiff had sought damages arising out of his claim, the issue before us may have been decided differently. See *Hallas* v. *Windsor*, 217 Conn. 689, 692, 587 A.2d 149 (1991) ("while cessation of allegedly unconstitutional or illegal activity may render moot a claim for injunctive relief, such cessation will not render moot a case that also states a claim for damages resulting from such activity prior

The defendants filed a motion to strike the plaintiff's complaint on the ground that no relief could be granted through the issuance of an order of mandamus. The plaintiff's memorandum of law in opposition to the defendants' motion to strike mentioned in a footnote that "[a]lthough following commencement of this litigation the defendants have discontinued this practice, the action remains pending in order to block the city from resuming the practice following termination of the case." Consequently, the defendants filed a response to the plaintiff's memorandum in opposition, claiming that the plaintiff's action had been rendered moot because the contested practice had ceased and that the action therefore should be dismissed sua sponte for lack of subject matter jurisdiction. The plaintiff thereafter filed a supplemental memorandum, arguing that the action was not moot because the complaint also sought an order for all future budgets to be calculated without using the allegedly improper reductions.

The court heard arguments on the issue of subject matter jurisdiction and held that the claim had been rendered moot.[3] The court recognized that "[s]ince the defendants have ceased the practice that the plaintiff complains of, the present factual scenario does render the plaintiff's complaint moot." In addressing the plaintiff's arguments that the practice could continue in the future, the court stated: "While it is conceivable that the defendants could resume the practice, if that were to occur, the plaintiff may challenge that budget by the means provided in the Middletown city charter. The

to its cessation"). However, since the plaintiff has made no claim for damages, we decide this claim solely on the basis of the equitable relief sought.

[3] Although the motion before the court was a motion to strike, "[o]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of *no matter in what form it is presented* . . . and the court must fully resolve it before proceeding further with the case." (Emphasis added; internal quotation marks omitted.) *Olympia Mortgage Corp.* v. *Klein,* 61 Conn. App. 305, 307, 763 A.2d 1055 (2001).

plaintiff's action is presently moot, and while the practice is 'capable of repetition,' it does not 'evade review.' " The Middletown city charter, chapter VI, § 1, provides in relevant part that "[w]ithin 15 calendar days following the passage of a budget, the electorate of the City shall have the power to challenge the budget by means of a referendum as provided in this Charter." Chapter III, § 7, provides in relevant part that "[i]f within the period of fifteen calendar days after publication in some newspaper with general circulation in the City of Middletown of such . . . budgetary resolution . . . a written petition, containing the signatures of at least five percent of the electors of the City and protesting any such enactment by the Common Council shall be filed with the City/Town Clerk, such . . . budgetary resolution . . . shall be suspended . . . . If it shall not be entirely repealed [by the common council], the Council shall . . . submit it to a vote of the electors affected by it . . . ."

We conclude that the court was correct in holding that the plaintiff's action was no longer justiciable due to mootness. However, we do not adopt the reasoning employed by the court in reaching that holding. The appropriate judicial avenue to the relief sought, rather than the political avenue provided in the Middletown city charter, prevents the plaintiff's claims from evading review. Furthermore, the plaintiff has not asserted any facts or arguments that demonstrate that the challenged practice is "capable of repetition."

We begin by setting forth the appropriate standard of review of a finding of mootness, which is well settled under our law. "Mootness is a question of justiciability . . . ." *Wallingford* v. *Dept. of Public Health*, 262 Conn. 758, 766, 817 A.2d 644 (2003). "Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires (1) that there

be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." (Internal quotation marks omitted.) Id., 766–67. Mootness is connected to the first factor of justiciability, that there be a live controversy at all stages of the litigation. Id., 767. "Mootness implicates the court's subject matter jurisdiction and is thus a threshold matter for us to resolve. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Schiavone* v. *Snyder*, 73 Conn. App. 712, 716, 812 A.2d 26 (2002). "The test for determining mootness is not [w]hether the [plaintiff] would ultimately be granted relief . . . . The test, instead, is whether there is any practical relief this court can grant the appellant." (Internal quotation marks omitted.) *In re Amelia W.*, 62 Conn. App. 500, 505, 772 A.2d 619 (2001).

In the present case, the plaintiff, via an application for a writ of mandamus, sought an order "compelling the defendant Common Council to publish a corrected 2000-2001 budget using no reduction in assessments for credits under the Connecticut Elderly Property Tax Relief Act . . . ." The plaintiff also sought a similar

order for all future budgets.[4] As the plaintiff conceded in his memorandum in opposition to the defendants' motion to strike, however, "the defendants have discontinued this practice . . . ." There was, therefore, no longer a live controversy, and the plaintiff's claims became moot.

An exception to the mootness doctrine exists, however, when the case presents a claim that is "capable of repetition, yet evading review." See *Loisel* v. *Rowe*, 233 Conn. 370, 378, 660 A.2d 323 (1995). In *Loisel*, our Supreme Court set forth in detail the analysis used in evaluating the applicability of that exception, initially noting that the otherwise moot question must meet three requirements to qualify for review: "First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same

---

[4] Even if we were to find that this case was not moot, the plaintiff's claim regarding "future budgets" would fail nonetheless due to the impossibility of the remedy sought by the plaintiff. The plaintiff's complaint sought a writ of mandamus to prohibit the use of the grand list reduction in all future budget years. However, a mandamus cannot run indefinitely into the future. A writ of mandamus enforces a complete and *immediate* right, the existence of which is uncontested. *Hennessey* v. *Bridgeport*, 213 Conn. 656, 659, 569 A.2d 1122 (1990); *Sterner* v. *Saugatuck Harbor Yacht Club, Inc.*, 188 Conn. 531, 533–34, 450 A.2d 369 (1982). There is no guarantee that the Middletown city charter's budgetary provisions will remain the same because the electors of Middletown are free to amend the charter. There is likewise no guarantee that the present state formulae for reimbursing municipalities for lost revenues under the elderly and disabled property tax relief program will remain constant. In fact, experience teaches us that because state revenues rise and fall, state expenditures, including grants to municipalities, also rise and fall. However, even if we presume that the current conditions will remain the same, that is, the charter and § 12-170aa et seq. will have the same effect, a declaratory judgment could protect the plaintiff's interests in the future.

complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot." Id., 382–83.

We address the *Loisel* factors beginning with the third factor, which relates to public importance. See id., 382. We recognize that the manner in which taxes are levied in municipalities is of some public importance. The public importance factor is, thus, satisfied. As our Supreme Court recognized in *Loisel*, however, "[s]heer public importance . . . cannot remedy a failure to satisfy the other components of the [mootness exception] doctrine." Id., 387.

We turn now to the first factor set forth in *Loisel*. It embodies the "evading review" aspect of the exception. The relevant inquiry is whether the nature of the claim presents a "functionally insurmountable time [constraint]" or the challenged action has an "intrinsically limited lifespan." Id., 383. If so, then it follows that the majority of cases presenting the same question will be rendered moot, and the question never will be resolved. In the present case, the plaintiff argues that the defendants' conduct is of a limited life span in that "the defendants are free to resume the practice in the next budget, collect millions in unnecessary taxes and then drop the practice again when challenged in court, only to resume it when the new action for mandamus is dismissed." It is apparent that the plaintiff is arguing that the postcomplaint conduct of the defendants, rather than anything inherent in the budget process itself, could make his claim have a functionally insurmountable time constraint. The plaintiff in this regard misconstrues the meaning of "evading review." We reiterate the language of our Supreme Court: "[T]he challenged action, or the effect of the challenged action, by

its very nature must be of a limited duration . . . ." *Loisel* v. *Rowe*, supra, 233 Conn. 382. The challenged action in the present case was the manner in which the defendants calculated the Middletown grand list. The plaintiff has made no argument as to the intrinsically limited life span of the Middletown budget process itself.

The plaintiff's argument as to the "evading review" factor is wholly without merit in that every civil action considered by a court could "evade review" according to the plaintiff's definition. In every cause of action, if a defendant chose to end the dispute by complying with the plaintiff's demand, the plaintiff could claim that the defendant could change its mind once the action had become moot. That is not the scenario protected by the "capable of repetition, yet evading review" exception to the mootness doctrine. It is not the defendant's conduct that makes a challenged action "evade review." The question is whether the challenged action itself has an intrinsically limited life span or would impose a " 'functionally insurmountable time [constraint]' "; *Wallingford* v. *Dept. of Public Health*, supra, 262 Conn. 770 n.12; upon a potential plaintiff. "[T]he 'capable of repetition, yet evading review' rule reflects the 'functionally insurmountable time constraints' present in certain types of disputes." Id. Medical treatment disputes, such as refusals to accept blood transfusions because of religious beliefs; see *Stamford Hospital* v. *Vega*, 236 Conn. 646, 654–55, 674 A.2d 821 (1996); provide examples of cases involving " 'functionally insurmountable time constraints . . . .' " *Wallingford* v. *Dept. of Public Health*, supra, 770 n.12; *Loisel* v. *Rowe*, supra, 233 Conn. 383.

We observe that the trial court held that the plaintiff's claim would not evade review because, if the defendants decided to pass a subsequent budget using the method the plaintiff alleged was improper, "the plaintiff

may challenge that budget by the means provided in the Middletown city charter." The Middletown city charter provides taxpayers a mechanism to appeal an annual budget.[5] Although we agree that the plaintiff's claim does not evade review, we do not adopt the reasoning of the trial court in that regard. The issue of whether the plaintiff has an adequate remedy at law or equity would determine whether mandamus was the proper remedy;[6] see *Sterner* v. *Saugatuck Harbor Yacht Club, Inc.*, 188 Conn. 531, 535–36, 450 A.2d 369 (1982); but is not pertinent to a resolution of whether a challenged action had an intrinsically limited life span so as to evade review. *Loisel* v. *Rowe*, supra, 233 Conn. 383.

---

[5] Chapter VI, § 1, of the charter provides in relevant part that "[w]ithin 15 calendar days following the passage of a budget, the electorate of the City shall have the power to challenge the budget by means of a referendum as provided in this Charter."

[6] As the defendants initially pointed out in their motion to strike, mandamus was not the proper avenue, in the plaintiff's own words, to "*compel the defendants . . . to stop* making an improper reduction in the value of the Middletown Grand List before calculating the mill rate." (Emphasis added.) The proper method to enjoin a person's allegedly improper actions is via an injunction. See General Statutes § 52-471 et seq. "A prohibitory injunction is an order of the court restraining a party from the commission of an act." *Tomasso Bros., Inc.* v. *October Twenty-Four, Inc.*, 230 Conn. 641, 652, 646 A.2d 133 (1994). In contrast, a writ of mandamus is proper when the plaintiff has a clear legal right to compel the performance of a duty. *Chamber of Commerce of Greater Waterbury, Inc.* v. *Murphy*, 179 Conn. 712, 717, 427 A.2d 866 (1980). A mandamus will not properly lie where the plaintiff seeks to establish a right; it cannot act upon a doubtful and contested right. *Sterner* v. *Saugatuck Harbor Yacht Club, Inc.*, 188 Conn. 531, 533–34, 450 A.2d 369 (1982). In the present case, although the plaintiff claims that the defendants had a duty to calculate the municipal mill rate on the basis of the full grand list, there is nothing in the Middletown city charter that assigns such a duty. Further, the plaintiff has not cited any Connecticut statute that specifically imposes such a duty on the defendants. The plaintiff ultimately seeks the mill rate to be determined in a manner that he claims is proper. Therefore, the plaintiff is actually attempting to *establish* a right to have the mill rate determined in that way, not to enforce a right that he already has. Although the plaintiff may disagree with the manner in which the defendants determined the mill rate, unless they simply failed to determine a mill rate at all, mandamus is an improper remedy. See *Chamber of Commerce of Greater Waterbury, Inc.* v. *Murphy*, supra, 718–19.

The nature of the plaintiff's claim does not present a functionally insurmountable time constraint and, therefore, it does not evade review.

The second factor in determining whether a claim may be reviewed, although technically moot, is whether it is "capable of repetition." Under *Loisel*, this analysis requires two primary inquiries: "(1) whether the question presented will recur at all; and (2) whether the interests of the people likely to be affected by the question presented are adequately represented in the current litigation." Id., 384. There is no dispute that the plaintiff, who is a resident and taxpayer of the city of Middletown, adequately represents the interests of persons likely to be affected by this case. However, the plaintiff's argument fails under the first inquiry set forth by *Loisel* regarding whether the claim is "capable of repetition."

Although the defendants have not conceded that their method of establishing the mill rate was improper, there likewise is no indication that there is a reasonable likelihood the defendants plan to use that method in the future. The plaintiff claims that the defendants had carried on that practice for years, and, therefore, it is "entirely *possible* that it will be resumed and will again have an impact on the plaintiff . . . ." (Emphasis added.) However, *Loisel* does not provide an exception to the mootness doctrine when it is merely *possible* that a question could recur, but rather "there must be a *reasonable likelihood* that the question presented in the pending case will arise again in the future . . . ." (Emphasis added.) *Loisel* v. *Rowe*, supra, 233 Conn. 382. When the conflict between the parties has been resolved to the extent that no immediate relief may be granted, the bare fact that the resolution does not eternally preclude the conduct from arising again does not except the claim from being rendered moot. See *Darien* v. *Estate of D'Addario*, 258 Conn. 663, 679–80, 784 A.2d 337 (2001) ("town's argument that the referendum outcome does not preclude it from revisiting the issue simply means that if and when the town does

revisit the issue, there will be a case in controversy for our consideration at that time"); *Waterbury Hospital* v. *Connecticut Health Care Associates*, 186 Conn. 247, 254, 440 A.2d 310 (1982) ("[w]e are not entitled to assume that there will be a strike, accompanied by similar picketing, in the future even though the appellant claims otherwise"); *Pearl* v. *Psychiatric Security Review Board*, 41 Conn. App. 688, 693, 678 A.2d 488 (1996) ("[w]hile the issue of whether the board must accept the testimony of expert witnesses may arise in the future, there is not a strong likelihood that a substantial majority of cases raising this issue will become moot before appellate litigation can be concluded"). Therefore, the plaintiff has failed to demonstrate that his claim is "capable of repetition" as that phrase has been described in *Loisel* and in cases that apply it with regard to the mootness doctrine.

We conclude that the plaintiff's claim is moot and not "capable of repetition, yet evading review" under our law.

The judgment is affirmed.

In this opinion the other judges concurred.